SCANNED at
and Emailed
_2/10/26_ by _DK_ . _61_ pages
date      initials   No.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

for the

District of

Division

| | |
|---|---|
| Kiyon Walker | Case No. _____ |
| _Plaintiff(s)_ | _(to be filled in by the Clerk's Office)_ |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |
| -v- | |
| Bryant (officer), Eliades (officer) Ciesco (Lieutenant), Sonido (Lieutenant) Distasti (Captain) | |
| _Defendant(s)_ | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

### (Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if
needed.

Name                                   Kiyon Walker
All other names by which
you have been known:
ID Number                              #420454
Current Institution                    Cheshire Correctional institution
Address                                900 Highland Ave.

| Cheshire | CT | 06410 |
|---|---|---|
| City | State | Zip Code |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an
individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s)
listed below are identical to those contained in the above caption.  For an individual defendant, include
the person's job or title *(if known)* and check whether you are bringing this complaint against them in their
individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1
Name                                   Bryant
Job or Title *(if known)*              Correction officer
Shield Number
Employer                               CT Department of Corrections
Address                                900 Highland Ave.

| Cheshire | CT | 06410 |
|---|---|---|
| City | State | Zip Code |

☑ Individual capacity  ☑ Official capacity

Defendant No. 2
Name                                   Eliades
Job or Title *(if known)*              Correction officer
Shield Number
Employer                               CT Department of Corrections
Address                                900 Highland Ave.

| Cheshire | CT | 06410 |
|---|---|---|
| City | State | Zip Code |

☑ Individual capacity  ☑ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3
    Name                            Ciesco
    Job or Title *(if known)*     Corrections Lieutenant
    Shield Number
    Employer               CT Department of Corrections
    Address                900 Highland Ave.
                              Cheshire       CT      06410
                              *City*        *State*     *Zip Code*
                          ☑ Individual capacity   ☑ Official capacity

Defendant No. 4
    Name                            Sonido
    Job or Title *(if known)*     Corrections Lieutenant
    Shield Number
    Employer               CT Department of Corrections
    Address                900 Highland Ave.
                              Cheshire       CT      06410
                              *City*        *State*     *Zip Code*
                          ☑ Individual capacity   ☑ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

    ☐ Federal officials (a *Bivens* claim)

    ☒ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Fifth and fourteenth ammendment violations

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Defendant No. 5

Name: Distasti
Job/title: Corrections Captain
Shield number:
Employer: CT Department of Corrections
Address: 900 Highland Ave Cheshire CT 06410

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

Each defendant state agents acting on behalf of the state.

## III.   Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- ☒ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☐ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☐ Other *(explain)* _____

## IV.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B.   If the events giving rise to your claim arose in an institution, describe where and when they arose.

See attached Complaint

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.    What date and approximate time did the events giving rise to your claim(s) occur?

July 5th, 2025 around 6:45pm thru 7:30pm ending July 10th

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See attached Complaint / Legal Claims / Witness Statements

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.



N/A

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

See attached Releifs

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**VII.   Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.   Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Cheshire Correctional Institution

B.   Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.   Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes

☐ No

☒ Do not know

If yes, which claim(s)?

D.      Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☒ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E.      If you did file a grievance:

1.      Where did you file the grievance?

Cheshire Correctional Institution

2.      What did you claim in your grievance?

Same facts alleged in my attached Complaint

3.      What was the result, if any?

Denied

4.      What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

I appealed the decesion subsequently it was denied

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

F.    If you did not file a grievance:

   1.   If there are any reasons why you did not file a grievance, state them here:

   2.   If you did not file a grievance but you did inform officials of your claim, state who you informed,
        when and how, and their response, if any:

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative
      remedies.

See attached administrative remedies

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your
administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying
the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility,
brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous,
malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent
danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐  Yes

☒  No

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

Plaintiff(s)    _____

Defendant(s)    _____

2.    Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.    Docket or index number

_____

4.    Name of Judge assigned to your case

_____

5.    Approximate date of filing lawsuit

_____

6.    Is the case still pending?

☐  Yes

☐  No

If no, give the approximate date of disposition.    _____

7.    What was the result of the case? *(For example: Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

_____

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☒ No

D.     If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit
       Plaintiff(s) _____
       Defendant(s) _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*

       _____

3.   Docket or index number

       _____

4.   Name of Judge assigned to your case

       _____

5.   Approximate date of filing lawsuit

       _____

6.   Is the case still pending?

       ☐ Yes

       ☐ No

       If no, give the approximate date of disposition _____

7.   What was the result of the case? *(For example: Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

       _____

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   1-10-2026

| | |
|---|---|
| Signature of Plaintiff | Kiyon |
| Printed Name of Plaintiff | Kiyon Walker |
| Prison Identification # | #420454 |
| Prison Address | 900 Highland Ave. |
| | Cheshire        CT        06410 |
| | City        State        Zip Code |

### B.    For Attorneys

Date of signing:   _____

| | |
|---|---|
| Signature of Attorney | |
| Printed Name of Attorney | |
| Bar Number | |
| Name of Law Firm | |
| Address | |
| | City        State        Zip Code |
| Telephone Number | |
| E-mail Address | |

Complaint/ Facts



1. On July 5th between 6:45 and 7:15 pm I exited my cell to take a shower. I went to the bottom shower it was full. I proceeded to the top shower but an inmate coming down the stairs informed me it was full also. I looked for a phone open where I could still view the showers. (Exhibit B1.)

2. I walked without incident or spoken to by staff to the South Block 4 #5 phone to call a close friend. (See Exhibit B1)

3. C.O Bryant while conducting a tour of the unit approached me and stated "you have a fucking doo-rag on sitting" I immediately took it off. ~~~~~~~~~~~~~~~~~~~~~~~~ (See Exhibit B1)

4. While still utilizing the phone I could hear CO Bryant saying very disrespectful things about me to another inmate and her assisting officer. (See Exhibit B1.)

5. I then ended the call early and calmy and approached the bubble (desk area) to apologize. (See Exhibit B1)

6. C.O Bryant had an outburst before I could say a word. Bryant screamed "Bitch get the fuck away from my bubble, you dumb bitch. You got me fucked up I run this shit, finally got yo ass you going to seg. (See Exhibit B1)

7. All I Responded was "Ms. I didn't do anything" hoping to descalate the situation. (See Exhibit B1)

# Complaint/facts



8. Bryant got more angry "Bitch get the fuck out my face you think im fucking playing" With very flagrant body movements. (See Exhibit B.1)

9. I walked away ~~[crossed out]~~ (fearful of my safety Due to Bryants actions and aggression). Heading towards my cell Bryant continued to keep yelling obscenities and threats. I Just kept walking not reacting to the obscenities and threats being thrown at me. (See Exhibit B1)

10. While yelling obscenities and threats she called into the radio for assistance and immediatley went back to the obscenities and threats. (See Exhibit B1)

11. Officers then came rushing the unit (typical emergerey respose) the officers approached and surrounded me very aggressively cuffed ~~[crossed out]~~ me turned the camera on and told me I was going to restrictive housing for disobeying a directorder (not a segregatable offense) (See Exhibit B1)

12. On the way to R.H.U I was strip searched and then placed into an empty cell (depriving me access to all of my personal property. then stating I was now being placed in R.H.U for flagrant disobedience.) (Handheld camera will show)

13. Lt. Ciesco was the one in charge of my placement told me he was going to talk to Bryant to find out what happened. He then proceeded to write the disciplinary

# Complaint/facts ③

report Seconding the actions of C.O Bryant When he was never present during the altercation he Just took her word. (See Exhibit E Pg.5)

14. on July 7th 2025, the disciplinary report investigator C.O Eliades approached my cell attempting to get me to sign the ticket (give guilty plea) (See Exhibit B2.)

15. I told C.O Eliades I would not Sign the ~~ticket~~ D.R as the allegations were false. Eliades Said he would watch the video and talk to his bosses (captain DiBiasti, Warden Reis) about what course of action would be taken (See Exhibit B2 & Ehibit E Pg.6, 12)

16. on July 8th 2025 C.O Eliades had me escorted from R.H.U to his office. told me he watched the video and see's I was telling the truth nothing about my actions were flagrant and ~~when~~ When Bryant~~o~~ approached my Doo-rag was removed. (See Exhibit B.3)

17. Eliades then tells me Im going to have to see the D.H.O (Disciplinary hearing officer) Him and his bosses said there not going against Staff for an inmate they let the D.H.O handle these issues Because he dosn't work here, When all 3 individuals had the power to seize my wrongful punishment. (See Exhibit E. pg 6, 12)

18. Eliades proceeded to tell me the D.H.O will be here tomorrow I was on the list to see ~~the D.H.O~~ D.H.O I gave him

# Complaint / facts



my Statment of the facts While with ~~me~~ Eliades and then he informed me Bryant falsified a disciplinary report for indecent exposure claiming She Seen an inmate masturbating. Evidence showed it was ~~impossible~~ impossible for her to have seen that. Also said its common for C.O Bryant to falsify reports and over power inmates.
(See Exhibit D pg. 3-6)

19. So Eliades, Reis, and Distasti all conspire to cover up staff brutallity. (See Exhibit D pg 3-6)

20. July 9th 2025 the D.H.O came to the facility, multiple inmates had their hearings. I was not allowed to see D.H.O dispite multiple attempts to ask staff ~~&~~ When would be my turn. (See Exhibit B4 & B5)

21. officer Eliades came to my cell and informed me after speaking with D.H.O and showing video to D.H.O I wasn't wrong but something came up and D.H.O had to leave and would not be back until next week. But him and his bosses came up with a solution. (See Exhibit B5)

22. Eliades said the only way I could be let out of R.H.U was to sign a class B Disciplinary report for disobeying direct order or I would have to stay till next week. I told him it wasn't fair he said It's D.O.C. are staff has to stick together.
(See Exhibit B5 & Exhibit F pg. 14

# Complaint/facts



23. I "Couldn't Handle" the psychological injury Solitary Confinement causes So I was forced to sign the class B non Segregatable ticket to be placed back in general population after doing 5days in Seg Witch is given when you Sign a class A disciplinary report. (See Exhibit A.1 & 2)

24. On July 11th, 2025 I approached officer Watson and Showed him the ticket because he was listed as a witness he then proceeded to read the report and said "She Said She was getting you for something that happened In the past So She was on your ass and you knew that". (See Exhibit B.6)

25. Officer Watson further stated "he didn't get why she did So much he didn't agree with how She handled the situation but he couldn't Side with or stop the incident because this is his Job and how would it look to go against Staff infront of inmates". (See Exhibit B 6,7 & Exhibit D 3-6)

26. I then asked So why are you added as a witness? He responded "He dosn't know Why Lt. Ciego did that because he didn't give no paperwork for the incident or even tell him what happend also saying he wasn't Suppose to write the ticket Bryant was", also he wasn't backing nothing on the ticket. (See Exhibit B 6,7 & Exhibit E Pg. 5)

(See Exhibit C) 27. I have 2 witness who wrote up there statements and got them notarized. Donald Daniels, Justin Bonner

# Legal Claims    (1)

(1). C.O Bryant ^caused me an "atypical and significant hardship" when she "Humiliated, threatened, disrespected me, and also Willfully and maliciously called for emergency assistance. (typically people, staff, or inmates are at risk of injury or possibly being harmed due to rushed responses on high Alert.) and falsified the incident to intentionaly place me in Administrative detention Without proper cause. See Exhibit B 1, See Exhibit C.1 2, See Exhibit D pg. 3-6, See Exhibit E pg. 5, See Exhibit F 1 2, See Exhibit A 1.)

(2) L.t Ciesco filed the disciplinary report for C.o Bryant When he Was not present at all for the altercation and should have reveiwed the incident before Just takin C.O Bryants Word because the camera Would of showed deliberate indifference to the accusations of C.O Bryants claims but not doing so is in violation of my Constitutional rights. also falsifying State legal documents, and putting me threw Wrongful incarceration continuing my atypical and significant hardship" (see Exhibit A 1, See Exhibit B 1, See Exhibit C 1 2, See Exhibit D pg 3-6, See Exhibit E pg. 5) Also L.t Ciesco Should have not Wrote the ticket because he Was not the reporting employee.

(3) Lt Sonido Was the acting Custody Supervisor/Unit Manager and his job is to reveiw the evidence and make sure all disciplinary reports are fully and correctly completed also can discard false or incorrect reports. And doing so it he Would of Watched the

# Legal Claims ②


3.) Video it Shows nothing about my actions were flagarent and it would also show Lt. Ciesco not being present for the incident there for he shouldn't have signed off on the ticket "continuing my wrongful incarceration also my atypical and significant hardship" (see Exhibit A. 1,2, See Exhibit E Pg. 5,6,12, see Exhibit F 1,2)

4.) C.O Eliades, and Captain Distasti both reviewed the Video/Evidence and had access to gain parts of audio due to phone calls in the block becoming fully aware of the false allegations leading to me being wrongfully placed in administrative detention both having authority to end my "atypical and significant hardship and my wrongful incarceration" both officers failed to do so. (See Exhibit A.1, See Exhibit D Pg. 3-6, See Exhibit E Pg. 5,6,12, See Exhibit F 1,2)

5.) C.O Eliades is in charge and able to substitute disciplinary reports and so is Captain Distasti and per Directive it says disciplinary reports should be substituted 24 hrs before hearing and why was mine not and only given the option after the d.H.O was deemed unavailable and I was scheduled to see D.H.O on 7-9-2025 So again they did not follow P.O.C Proper Procedure allowing my continued "atypical and significant hardship and wrongful incarceration." (See Exhibit A.2, See Exhibit B 4,5, See Exhibit E Pg 19

# Prayer for Releif

1. A declaration that the acts and ommissions described herein violated my rights under the Constitution and laws of the United States of America.

2. A trial on all issues triable by Jury.

3. Punitive damages against each defendant Jointly and Severly in the amount of $250,000.00 (two hundred and fifty thousand)

4. Plaintiff cost in Suit.

5. Any additional releif this court deems Just, proper, and equitable.

6. I have NO plain, adequate or Complete remedy at law.

CN 9602
REV
04/30/2021

# Inmate Grievance Form- Level 1
## Connecticut Department of Correction

| Facility/Unit: Cheshire C.I / SB-4-15 | Date: 7-21-2025 |
|---|---|
| Inmate name: Kiyon Walker | Inmate number: 420454 |

## INMATE ADVISEMENT

- Any inmate who files a grievance must follow all instructions in Section 5 and 6 of Administrative Directive 9.6, "Inmate Administrative Remedies."
- Any grievance which does not follow the instructions identified in the above mentioned sections shall be rejected.

## STATE THE PROBLEM AND REQUESTED RESOLUTION

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

On 7-6-2025, I wrote the Warden regarding what comes next in this grievance. She did not respond as of 15 days therefore no CN9601 is attached. On 7-5-2025 officer Bryant creates a disturbance in the unit threatening me and yelling obscenities at me she then falsified an incident in order to place me in Rhu without cause. If they listen to any calls done in the unit during the time of 6:45 - 7:15 on 7/5/25 in South block 4 you can add audio to the video as she screamed for 5mins before the unit was secured.

(see Attached pg 2.)

Inmate signature: *[signature]*    Date: 7-21-2025

- Deposit this form in the "Administrative Remedies" box.

## DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW

| Date Received: 07/25/25 | IGP #: 125-26-040 |
|---|---|
| Disposition: Denied | Date of Disposition: 11/12/25 |

Reason:
The grievance you filed claiming Correction Officer (C/O) Bryant was unprofessional in her conduct has been reviewed. After a thorough review it has been determined that your claim is unsubstantiated. Further, you pled guilty to a Disciplinary Report for Disobeying a Direct Order (Failing to comply expeditiously with the instruction of a staff member) which was substituted from CO Bryant's original Class A Disciplinary Report for Flagrant Disobedience. Therefore, this grievance is denied.

☐ This decision is not subject to further appeal.    ☑ This matter may be appealed within 5 calendar days.

| Staff Name Print: AW Soley | |
|---|---|
| Signature: AW Sly | Date: 11/12/25 |

This officer falsified a incident, falsified a report, caused the facility to cease normal operations as she had me placed in Rhu on false pretences.

Based on the foregoing I am requesting that a repremand be issued to this officer and she receive training on inmate contact and a conversation about being truthful when upholding the departments morals and professionalism.



# Inmate Grievance Appeal Form - Level 2
## Connecticut Department of Correction

CN 9604
REV
04/30/2021

Inmate name: Kiyon Walker    Inmate number: 420454

Facility/Unit: Cheshire C.I / SB-6    Housing unit: SB-6-45    Date: 11-19-25

IGP number: 125-26-040

---

## Inmate Acknowledgement

- Use this form to appeal a CN 9602, Inmate Grievance Form- Level 1.
- When submitting this form, the following must be included for processing:
  - All original documentation for prior resolution (e.g. Initial CN 9601, Inmate Request form; CN 9602, Inmate Grievance Form Level 1; etc.).
- NOTE:
  - Your appeal must be filed within five (5) calendar days of the Level 1 response and deposited in the "Administrative Remedies" box within the institution. A level 2 shall be rejected if all documentation from the level 1 response is not included.

---

## Appeal of Level 1 Decision to Level 2

I am appealing the Level 1 decision because:

The Reason for my late response is because I was in the Restrictive Housing unit between 11-14-25 - 11-18-25 with no access to my property or a Level 2 Grievance. on 7-5-25 C.O Bryant created a disturbance in the unit threatening me and yelling obscenities at me then she falsified an incident to place me in R.H.U without cause. If you listen to calls in the unit during 6:45-7:15 on 7/5/25 in south block 4 you can add audio to the video she screamed for 5 mins before the unit was secured this officer falsified a incident, falsified a report, caused the facility to cease normal operations as she had me placed in R.H.U on false pretence. Based on the foregoing I am requesting that a reprimand be issued to this officer and she receive training on inmate contact.

Inmate signature: Km    Date: 11-19-25

---

## FOR OFFICIAL USE ONLY - LEVEL 2 REVIEW

Date received: 12/1/2025    Disposition: *Denied*    Date of disposition: 12/11/25

Reasons:

*You are appealing a level one grievance (125-26-040) regarding staff conduct (CO Bryant) at Cheshire CI. After review, the response provided by Acting Warden Soley to your level 1 grievance was thorough and appropriate. You received a disciplinary report and plead guilty to the Class B offense, "disobeying a direct order." Your claims of staff misconduct by Officer Bryant were found to be unsubstantiated; therefore, your grievance is denied.*

Level 2 reviewer print name: *Rodriguez*    Title: *DA*

Level 2 reviewer signature:    Date: 12/11/25

☐ This grievance may be appealed within five (5) Calendar days to Level 3.

☑ This decision is not subject to further appeal.

# Exhibit

# A

1. Disciplinary report

2. Disciplinary summary report

*Everything* ... *that*



I/M
31

# Disciplinary Report
## Connecticut Department of Correction

CN 9503/1
REV 05/21/24

| Facility/Unit: Cheshire Correctional Institution | | Report date: 7/5/2025 | |
|---|---|---|---|
| Inmate name: Walker, Kiyon | | Inmate number: 420454 | |
| Housing unit: South Block 2 | Location of incident: South Block 2-15 cell | | |
| Report number: CCI-2025-07-030 | Incident date: 7/5/2025 | Incident time: 7:00 ☐ am ☒ pm | |
| Offense: Flagrant disobedience | | Offense class: ☒ A ☐ B ☐ C | |

Description of violation:   I/m Walker, Kiyon #420454 was given multiple verbal directions to take off his Doo-Rag (head covering). I/m Walker was told to take it off while going to the shower and refused. He then was wearing it while talking on the housing unit phone. He refused to take it off while being told by unit officers multiple times.

I/m Walker was given a class A Disciplinary Report  Flagrant Disobedience

Disobeying a clearly stated order in a way that conveys a deliberate challenge to authority and jeopardizes the safety, security and orderly operation of the facility.

Witness(es): Officer Bryant, Officer Waston.

Physical evidence: None

| Reporting employee (print): Ciesco | | Title: Lieutenant |
|---|---|---|
| Reporting employee (signature): | | |
| Date: 7/5/2025 | Time: 9:22 ☐ am ☒ pm | Employee requests copy: ☐ yes ☒ no |

## CUSTODY SUPERVISOR / UNIT MANAGER REVIEW

| ☒ Administrative Detention | Date: 7/5/25 | Time: 9 24 ☐ am ☒ pm |
|---|---|---|
| ☐ Accused inmate interviewed | ☐ Informal disposition | |

Custody Supervisor / Unit Manager name (print): Sancho

Custody Supervisor / Unit Manager signature:

| Title: LT | Date: 7/5/25 | Time: 9 25 ☐ am ☒ pm |
|---|---|---|

## INMATE NOTICE

| Delivered by (print): Guerrera | Delivered by (signature): |
|---|---|
| Title: c/o | Date: 7-5-25 | Time: 9:40 ☐ am ☒ pm |

- Check if inmate receiving disciplinary report is placed on a Behavioral or Mental Health Observation Status.
- If applicable, delivering officer must read the Disciplinary Report to the inmate and leave the copy at the Officers Station.
- Once a qualified mental health provider deems that the inmate can retain paper, the Disciplinary Report shall be issued to the inmate in accordance with this directive.



# Disciplinary Process Summary Report
## Connecticut Department of Correction

CN 9504/1
Rev 2/27/24

| | |
|---|---|
| Facility/Unit:   Cheshire Correctional Institution | Housing unit:    EB1- |
| Report date:  7/5/25 | Report number: CCI-DR-2025-07-039 | Hearing date:  N/A |
| Inmate name: Walker Kiyon | Inmate number: 420454 |
| Reporting employee: LT Ciesco | DHO: N/A |
| Investigator:  C/O Eliades | Advisor:    **N/A** |

Inmate appearance:    ☒ yes   ☐ no    Reason: N/A

☐  Suspended sentence

| ☐ Deferred prosecution | Number of days: N/A | Through:   N/A |
|---|---|---|
| ☐  Charge dismissed | By: N/A | Reason: N/A |

Continuances (dates and reasons):

N/A

**SANCTIONS/PENALTIES:**
30    LOC   7/5/25  8/3/25

## SUMMARY

| | Charge/class | Plea | Finding | Forfeiture of Risk Reduction Earned Credits: | | |
|---|---|---|---|---|---|---|
| Original | Flagrant Disobedience  /A | Not Guilty | Not Guilty | ☐ -10 | ☐ -15 | ☐ - 25 |
| Substitute | Disobeying a Direct Order | Guilty | Guilty | | | |
| ☐  Confidential information | Reliability: | | | ☐ - 60 | ☐ - _____ | |

Documentation submitted:   ☐ Incident report       ☐ Medical incident report
☐  Use of force report   ☐ Other (specify)

| Witness name:    N/A | appearance ☐ yes ☐ no |
|---|---|
| Testimony: N/A | |

| Witness name:    N/A | appearance ☐ yes ☐ no |
|---|---|
| Testimony: N/A | |

| Witness name:   N/A | appearance ☐ yes ☐ no |
|---|---|
| Testimony: N/A | |

| ☐  Witness exclusion | Name: | Reason: |
|---|---|---|

Physical evidence, written testimony:

Exhibit

B

1, 2, 3, 4, 5, 6, 7

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV
04/30/2021

Inmate name: Kiyon Walker

Inmate number: 420454

Facility/Unit: C.C.I

Housing unit: 54-15

Date: 7-14-25

Submitted to: F.O.I Camera preservation (MS. K)

Request: I'm writing you to preserve Any & all Skycam Video of South Block 4 on July 5th 2025 from 5p.m to 7:30p.m and my reason is for future litigation thank you for your time and patience

"Copied before going in mail box will be copied again ~~strikethrough~~ once response given"

*continue on back if necessary*

Previous action taken:

*continue on back if necessary*

Acted on by (print name): C/o Kozilkowski

Title:

Action taken and/or response:
Your request is acknowledged and you will be notified when completed.

• RECEIVED JUL 16 2025

*continue on back if necessary*

Staff signature:

Date:

## Inmate Request Form
### Connecticut Department of Correction

CN 9601
REV
04/30/2021

Inmate name: Kayon Walker    Inmate number: 420451

Facility/Unit: C.C.I    Housing unit: 54-15    Date: 7-14-25

Submitted to: F.O.I Camera preservation (MS.K)

Request: Im writing you to preserve any and all Sky cam video of East block 1 (Rhull) on July 7th 2025 from 7-A.M - 3 P.m and my reason is for future Litigation, thank you for your time and patience

"Copied before going in mail box will be copied again when response given"

*continue on back if necessary*

Previous action taken:

*continue on back if necessary*

Acted on by (print name): C/o Kozillowski    Title:

Action taken and/or response:    Your request is acknowledged and you will be notified when Completed.

**RECEIVED JUL 1 6 2025**

*continue on back if necessary*

Staff signature:    Date:

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV
04/30/2021

Inmate name: Kiyon Walker

Inmate number: 426454

Facility/Unit: C. C. I

Housing unit: 54-15

Date: 7-14-25

Submitted to: F.O.I Camera preservation (MS. K)

Request: I'm writing you to preserve any and all sky cam videos of the hallway outside the D.r office and visitation also the D.r office on July 8th 2025 from 7. A.M threw 3 p.m and my reason is for future Litigation thank you for your time and patience

(Copied before going in us mail will be copied again once response is given)

*continue on back if necessary*

Previous action taken:

*continue on back if necessary*

Acted on by (print name): C/o Kozikowski

Title:

Action taken and/or response:

Your request is acknowledged and you will be notified when completed.

• RECEIVED JUL 16 2025

*continue on back if necessary*

Staff signature:

Date:

4

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV
04/30/2021

Inmate name: Kiyon Butler

Inmate number: 426454

Facility/Unit: C.C.I

Housing unit: South 4-15

Date: 7-14-25

Submitted to: F.O.I Camera preservation (MS.K)

Request: Im Writing you to preserve any & all Sky Cam Video of the Hallway outside the Dr office & visitat: and the D.I office on July 9th 2025 from 7.A.m threw 3pm and my reason is for future Litigation thank you for your time and patience

(copied before going in U.S mail will be copied again once response given)

continue on back if necessary

Previous action taken:

continue on back if necessary

Acted on by (print name): C/o Korikowski

Title:

Action taken and/or response:

Your request is acknowledged and you will be notified when Completed

RECEIVED JUL 16 2025

continue on back if necessary

Staff signature:

Date:

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV
04/30/2021

5

| Inmate name: Kiyon Walker | Inmate number: 426454 |
|---|---|

| Facility/Unit: C.C.I | Housing unit: S4-15 | Date: 7-14-25 |
|---|---|---|

Submitted to: F.O.I Camera preservation (MS.K)

Request: Im Writing you to preserve any and all Sky Cam video of East block 1 (RHU) on July 9th 2025 from 7A.M - 3p.m and my reason is for future Litigation, Thank you for your time and patience

"Copied before going in mail box will be copied again when response given"

*continue on back if necessary*

Previous action taken:

*continue on back if necessary*

| Acted on by (print name): C/o Kozikowski | Title: |
|---|---|

Action taken and/or response:

Your request is acknowledged you will be notified when Completed.

**RECEIVED** JUL 16 2025

*continue on back if necessary*

| Staff signature: | Date: |
|---|---|



6

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV
04/30/2021

Inmate name: Kiyon Walker          Inmate number: 420454

Facility/Unit: C.C.I          Housing unit: S4-15     Date: 7-14-25

Submitted to: F.O.I Camera preservation (MS. K)

Request: Im writing you to preserve Any & All Skycam video of South Block 4 on July 11th 2025 from 3:30 Pm to 6:30 Pm and my reason is for future litigation thank you for your time and Patientce

"Copied before going in mailbox will be copied again once response given"

showing C.O Watson the ticket

continue on back if necessary

Previous action taken:

continue on back if necessary

Acted on by (print name): C/O Kozilkowski          Title:

Action taken and/or response:
Your request is acknowledged and you will be notified when Completed.

RECEIVED JUL 16 2025

continue on back if necessary

Staff signature:          Date:

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV
04/30/2021

7

| Inmate name: Kiyon Walker | Inmate number: 420454 |

| Facility/Unit: C.C.I | Housing unit: SB-4-15 | Date: 7-18-25 |

Submitted to: F.O.I (MS. K)

Request: Im Writing you to preserve any and all Skycam Video of South Block 4 on 7-14-2025 from 9pm - 10 p.m and my reason is for future litigation, thank you for your time and patience

"Copied before going in mail box will be copied again when response given"
"Sharing watson ticket on camera!!"
~~Sharing ~~ ~~Jo~~ ~~_____~~

continue on back if necessary

Previous action taken:

continue on back if necessary

| Acted on by (print name): | Title: |

Action taken and/or response: Your request is acknowledged. You will be notified when preservation is complete.

continue on back if necessary

| Staff signature: Jamac | Date: |




# STATE OF CONNECTICUT
## *DEPARTMENT OF CORRECTION*
CHESHIRE CORRECTIONAL INSTITUTION
OFFICE OF INVESTIGATION AND INTELLIGENCE
900 HIGHLAND AVENUE
CHESHIRE, CT 06410

To:  Walker, Kiyon #420454

From:  Administrative Captain

Date: 07/24/2025

Re: Preservation of video evidence.

Your request to preserve camera footage from the following locations, dates, and times, is complete.

1. South Block 4, on 7/5/2025, from 5PM-7:30PM
2. East Block 1, on 7/7/2025, from 7AM-3PM
3. East Block Hallway, on 7/8/2025, from 7AM-3PM
4. East Block Hallway, on 7/9/2025, from 7AM-3PM
5. East Block 1, on 7/9/2025, 7AM-3PM
6. South Block 4, on 7/11/2025, from 3:30PM-6:30PM
7. South Block 4, on 7/14/2025, from 9PM-10PM

The following discs were secured into evidence:

CCI-VP-25-1520
CCI-VP-25-1521

In accordance with Connecticut General Statute, 1-210, b. (18)  Any access to the aforementioned videodisc will require a subpoena based on the risks to safety, security and sensitive nature of its contents.



2 Witness statements

1. Declaration of Justin Bonner
2. Declaration of Donald Daniels

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Kiyon Walker                    :      Civil no.
plaintiff

v.                              :

                                :           Date:

## DECLARATION OF JUSTIN BONNER

I, Justin Bonner, do declare under the penalities of perjury that
the following is true and correct and is based on my personal
knowledge:

1. I am over the age of eighteen years and believe in the obligat-
ions of an oath.

2. I am an incarcerated individual in the state of connecticut.

3. I have been incarcerated since 2010 .

4. on july 5th 2025 around 6:45 pm I was at recreation with my tier
I observed officer Bryant approach inmate walker while he was on
the phone and say somthing to him.

5. I watched the encounter because officer Bryant makes it blatently
clear who she does not like. She does not like mr Walker this has
been known to me for weeks.

6.Later mr Walker approached the bubble and immediately officer
Bryant started screaming she yelled "Bitch get the fuck away from
my bubble"... Officer Bryant was being extreemly disrespectful to
mr Walker

7.Mr Walker then left and started walking toward his cell in the
back of the unit

8. Officer Bryant kept yelling vulgar things to mr Walker which he
did not respond to.

9. When mr Walker did not respond to Officer Bryants verbal
assault she became more angry and said something into her radio and
became more verbally aggressive with mr Walker.

10. Officers then entered the unitand took mr walker to the restrictive
housing unit (R.H.U).

11. I was confused about why he would be going to the restrictive
housing unit as per advice of the D.O.C I familiarize myself with
the cheshire hand book and the A.d 9.5 (administrative directive 9.5

code of penal discipline) and there was no valid reason to place Mr Walker in the solitary confinement unit (r.h.u)

12. While securing in my cell my cellie was explaining to a lieutenant what officer Bryant was doing was wrong he responded by stating "just take it in we will figuer it out.

### DECLARATION UNDER PENALTY OF PERJURY
### PURSUANT TO 28 U.S.C § 1746

I, Justin Bonner, declare (certify,verify, or state) under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Date: 7 / 14 /2025 _____
                                              Justin Bonner

        NOTARY

                                        Cited Hairns vs Kearney

Subscribed and sworn to before me
this 18 day of July 225
_____
        Notary Public
My Commission Expires 5/31/25

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Kiyon Walker                          :        Civil no.
plaintiff

v.                                    :

                                      :              Date:


DECLARATION OF DONALD DANIELS

I, Donald Daniels, do declare under the penalities of perjury that
the following is true and correct and is based on my personal
knowledge:

1. I am over the age of eighteen and i believe in the obligations
of an  oath.
I am an incarcerated individual in the state of connecticut.

2. I have been incarcerated since 2017 I am currently challangeing
my conviction.

3. on july 5th 2025 at about 6:50 pm I walked into my cell to wash
my hands after using the phone.

4. within a few minutes I could hear a womans voice screaming she
yelled "Bitch get the fuck away from my bubble," The yelling continued
but I didnt hear a second person so i went to the door to see what
the noise was all about and knowing Officer Byrant was working the
unit I was interested in seeing who her next victim is going to be
as this is normal conduct of officer Bryant

5. As I approached the door I could see Officer Byrant screaming
at an inmate (Kiyon Walker) This was not a suprise as she always
made it clear she does not like him.

6. Inmate Walker walked away dispite the verbal aggression and
disrepect. He was walking towards his cell in the back of the unit
he made it half way across the unit not responding to her verbal
assault.

7. Officer bryant then said somthing into her radio proceeded to
stand up and yell to mr Walker "I got somthing for your bitch ass"
and continued screaming.

8. Someone in the block yelled im going to write you up to officer
Bryant She responded by yelling "I dont give a fuck put me on paper

that shit dont do nothing anyway" and proceeded to aggressivly adress Mr Walker and anyone else in her path.

9.I then seen alot of corrections officers and lieutenants enter the unit and take Mr walker to R.H.U

10. This is not the first time ive witnessed officer Bryant partake in corruption most recent I was in the Restrictive housing unit the guy in the cell next to me had a ticket dismissed where she said in the ticket she observed the man masturbating. I heard the D.r Officer Eliades tell him"I watched the video its not possible she could see into your cell from that angle she does this alot,when you see the D.H.O he will toss it."

11 The Guy asked why he had to wait for the D.H.O C.O Eliades said "warden wont let me throw it out.

12. I was still in the R.H.U upon that mans release his ticket was dismissed as Officer Bryant clearly falsified that report.

## DECLARATION UNDER PENALTY OF PERJURY
### PURSUANT TO 28 U.S.C § 1746

I, Donald Daniels, Declare ( certify, verify, or state) under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

7 / 18 / 05
Date

_Donald Daniels_

Citee Haines VS. Ker

NOTARY

Subscribed and sworn to before me
this 18 day of July 25

_Notary Public_
My Commission Expires 5/31/8



Administrative

Directive 2.17 Employee conduct

Pages 3-6

| Directive Number 2.17 | Effective Date 09/26/14 | Page 3 of 7 |
|---|---|---|
| Title | Employee Conduct | |

any arrest or receipt of summons, and subsequent disposition, to the Unit Administrator within 48 hours.

10. Report the receipt of any civil summons that impacts employment (e.g., named as a defendant in an employee or inmate lawsuit, restraining order, capias, contempt of court, etc.) associated with the employee's duties to an appropriate supervisor on or by the next scheduled work day, but no later than 48 hours after receipt of the summons.

11. Provide the Office of the Attorney General with relevant documents, subpoenas or other materials related to legal action with which they are involved in accordance with Administrative Directive 1.12, Employee Legal Counsel/Representation. Staff shall cooperate in all inquiries, depositions, interrogatories, or other legal processes that will assist the Legal Affairs Office and/or the Office of the Attorney General.

12. Inform the appropriate supervisor and the Human Resources Unit, in writing, of any change of address and/or telephone number within 48 hours.

13. Report to an appropriate supervisor any condition or use of medication the employee is taking, that may affect job performance or judgment.

14. Report any medication brought into the worksite and maintain any personal property and medication in a secure manner.

15. Act in a professional manner showing respect to other employees and the public.

16. Respect and protect the rights of inmates.

17. Intervene and attempt to stop any other employee who is objectively known to be using excessive or illegal force.

18. Report the use or observation of excessive or illegal use of force.

19. Maintain good stewardship of all state property and equipment.

20. Maintain appropriate demeanor at all times.

21. Be courteous and accommodating in all dealings with the public, to include telephone etiquette.

22. Report, in writing by completing form CN 21701, Employee-Inmate Relationship Acknowledgment to a supervisor when a friend or relative is or becomes incarcerated in any Connecticut DOC facility within 48 hours of discovery.

23. Cooperate fully and truthfully in any inquiry or investigation conducted by the Department of Correction and/or any law enforcement, regulatory or state agency.

24. Appropriately file information as required by the State Ethics Commission in accordance with Administrative Directive 1.13, Code of Ethics.

25. Promptly report to a supervisor any threat, harassment, physical or verbal abuse, assault, or act of intimidation. Incidents of discrimination or sexual harassment shall be reported in accordance with Administrative Directives 2.1, Equal Employment Opportunity and Affirmative Action and 2.2, Sexual Harassment.

26. An employee must receive written authorization from his/her Unit Administrator and the Unit Administrator housing the incarcerated family member in order to visit, phone or correspond with such family member.

27. Use reasonable, sound judgement in the performance of duty.

B. The following behavior shall be strictly prohibited:

1. Any act that jeopardizes the security of the unit, health, safety, or welfare of the public, employees or inmates.

Rev. 9/23/21, 1/3/24, 4/16/24, 2/25/25, 3/18/25, 6/18/25, 8/14/25, 12/23/25

| Directive Number | Effective Date | Page 4 of 7 |
|---|---|---|
| 2.17 | 09/26/14 | |
| Title | | |
| Employee Conduct | | |

2.     Excessive or Illegal Use of Force.

3.     Unauthorized possession of non-department issued firearms or other weapon while on duty or state property.

4.     Conveyance or possession of unauthorized items within, into or out of a facility, or other correctional unit.

5.     Neglect of duty or failure to supervise.

6.     Sleeping or inattentiveness while on duty.

7.     Possessing unauthorized items while on duty (e.g., reading materials, personal electronic devices, etc.).

8.     Abuse of workers compensation.

9.     Reporting to work in an impaired condition as a result of the use of alcohol, an illegal drug, recreational marijuana, or any medication (including medical marijuana) that may impair performance or judgement. Employees are not permitted to consume alcohol or marijuana while on duty or in uniform.

10.     Entering a correctional unit when off duty unless previously authorized.

11.     Engaging in abusive, obscene, threatening, intimidating language or behavior.

12.     Engaging in unprofessional or illegal behavior, both on and off duty that could reflect negatively on the Department of Correction or conflict with the Department's mission, to include association or membership with security risk groups, criminal enterprises, hate groups, or groups of high interest to law enforcement. It shall be the employee's responsibility to seek written clarification from the Unit Administrator regarding such association or membership.

13.     Engaging in any activity, which would conflict with the proper discharge of or impair the independence of judgment in the performance of duty.

14.     Engaging in bartering, gambling or games of chance with inmates.

15.     Engaging in retaliation or reprisal (to include coercion or threatening behavior) against an inmate for participating in activities that are protected by law or directive. Such protected activities include, but are not limited to:

        a.     filing an appeal, grievance or property claim in accordance with Administrative Directive 9.6, Inmate Administrative Remedies;

        b.     accessing courts; and,

        c.     engaging in privileged correspondence in accordance with Administrative Directive 10.7, Inmate Communications.

16.     Engaging in undue familiarity with inmates which includes, but shall not be limited to, the following:

        a.     any sexual contact between an employee and an inmate and/or person under the Department's supervision, or continuing sentence under the Department's supervision including but not limited to parole or community supervision;

        b.     sexualizing a situation without physical touching such as partaking in activities involving suggestive or pornographic photographs, suggestive or explicit letters or behavior which provides sexual gratification;

        c.     personal involvement in an inmate's private or family matters outside assigned professional duties;

        d.     performing personal favors for inmates outside assigned professional duties;

| Directive Number 2.17 | Effective Date 09/26/14 | Page 5 of 7 |
|---|---|---|
| Title | Employee Conduct | |

e.   writing letters of recommendation, character letters, or serving as a reference for an inmate(s)

f.   discussing with an inmate any matter pertaining to the inmate's crime(s) or the crime(s) of other inmates (except as required pursuant to official business);

g.   discussing with an inmate personal and/or business matters of employees;

h.   discussing security operations of a facility with an inmate;

i.   inconsistently enforcing facility rules to favor an inmate or group of inmates over other inmates or groups of inmates;

j.   having personal work done by an inmate;

k.   visiting; corresponding with; accepting telephone calls, personal notes or letters from an inmate; or engaging in any method of communication while off duty with an inmate who is under the custody of the Department (except for an immediate family member AND only when form CN 21702, Request for Employee-Inmate Communication has been approved by the employee's Unit Administrator and the Unit Administrator of the facility where the immediate family member is incarcerated);

l.   housing an inmate who is under the custody of the Department (to include an inmate on community supervision), at the employee's home (except for an immediate family member AND when authorized in writing by the employee's Unit Administrator and the Director of Parole and Community Services);

m.   entering into a personal or business agreement with an inmate, including, but not limited to,

    i.   to acting as a bail bondsman for an inmate or

    ii.  providing the resources for the inmate to bond out without prior notification to and approval from the Unit Administrator; and,

n.   Transporting an inmate to an unauthorized location.

o.   Accepting any item that is outside the scope of their duties, gift, or commissary item from an inmate under any circumstances, regardless of the items nature, purpose or value.

17.   Engaging in behavior which is sexually, emotionally, or physically abusive or harassing toward the public, employees or inmates.

18.   Unauthorized appropriation or use of any property belonging to the public, state or an inmate for personal, political or union purposes (i.e., computers, electronic mail, Department letterhead, etc.).

19.   Release of any confidential information or unauthorized or inaccurate release of information, records, or documents.

20.   Falsification, unauthorized alteration, or destruction of documents, log books, and other records, including job applications.

21.   Use of official position, uniform, identification or badge to gain any personal advantage or an advantage for another in any improper or unauthorized manner.

22.   Engaging in conduct that constitutes, or gives rise to, the appearance of a conflict of interest.

23.   Unauthorized acceptance of any item or service for oneself or family members, including but not limited to, a gift, loan,

| Directive Number 2.17 | Effective Date 09/26/14 | Page 6 of 7 |
|---|---|---|
| Title | Employee Conduct | |

       political contribution, reward or promise of future employment as outlined in Administrative Directive 1.13, Code of Ethics.

24. Engage in any political activities that conflict with state and federal laws to include the Hatch Act.
25. Failure to follow a lawful order.
26. Engaging in insubordination.
27. Failure to cooperate with a Department investigation.
28. Lying or giving false testimony during the course of a Department investigation.
29. Intentionally withholding information necessary for the completion of an investigation.
30. Failure to properly conduct tours and/or inmate counts.
31. Engaging in behavior to include lying or spreading false rumors that purposely defame the character of an employee, the public or the Department.
32. Engaging in any behavior or activity prohibited by Administrative Directives 2.1, Equal Employment Opportunity and Affirmative Action and 2.2, Sexual Harassment.
33. Engaging in retaliation, coercion, intimidation, harassment, threats or discrimination against any employee.
34. Conveying or possessing the following in a correctional facility unless authorized in writing by the Unit Administrator or higher authority:

    a. any personal electronic wireless communication device (to include, but not limited to, a cellphone, pager, blackberry device, personal digital assistant (PDA));

    b. any audio recording or playback device (to include, but not limited to, a radio, tape/CD player, ipod or MP3 player); or,

    c. any photographic/video recording or playback device (to include, but not limited to, a television, DVD player, ipod, MP3 player, or electronic/video game).

6. <u>Staff Discipline</u> In accordance with Administrative Directive 2.6 staff shall be subject to disciplinary sanctions up to and including termination for violating agency inmate sexual abuse or harassment policies. Termination is the presumptive disciplinary sanction for staff that have been found to have engaged in sexual abuse. All terminations for violations of agency inmate sexual abuse or harassment policies or resignations by staff who would have been terminated but for their resignation shall be reported to law enforcement agencies, unless the activity was clearly not criminal, and to any relevant licensing bodies.

7. <u>Supervision of Family Members</u>. An employee shall not be employed in any position that places the employee above or under the chain of command or possible supervision of any immediate family member as defined in Section 3(E), nor shall the employee be placed above or under the chain of command or possible supervision of any immediate family member of the employee's spouse or cohabitant. Such relationships must be reported by the family member of higher rank, in writing, to the Unit Administrator.

    A relationship between family members who are not immediate family as defined in Section 3(E) of this Directive may preclude placement of an employee in a chain of command. Such relationships shall be evaluated by the appropriate Division Head on a case by case basis.

8. <u>Staff Relationships</u>.

    A. <u>Supervisor/Employee Relationships</u>. Any supervisor or manager who

Rev. 9/23/21, 1/3/24, 4/16/24, 2/25/25, 3/18/25, 6/18/25, 8/14/25, 12/23/25



Exhibit

E

ADministrative

Directive 9. 5 Code of penal
discipline

Pages 5, 6, 12, 14

| Directive Number | Effective Date | Page 5 of 21 |
|---|---|---|
| 9.5 | 10/01/2019 | |
| Title | | |
| Code of Penal Discipline | | |

10. Specific Notice of Formal Inmate Discipline.
   a. Initiation of Disciplinary Report.
      i. A CN 9503, Disciplinary Report shall be prepared by the reporting employee, upon detection of an act which gives cause for formal disciplinary action.
      ii. A separate disciplinary report shall be prepared for each offense charged.
     iii. Only the most serious possible charge relating to an offense shall be charged to a single act.
     iv. When additional charges are justified as a result of sequential behaviors during an incident charge may be filed separately.
   b. Facility Procedure.
      i. The Disciplinary Report shall be delivered to a custody supervisor or unit manager for review and signature.
        1. If a supervisor generates a Disciplinary Report, another supervisor shall review and sign the report.
      ii. A photo copy of the Disciplinary Report shall then be delivered to the inmate and original submitted to the facilities Disciplinary Investigator.
     iii. Provision shall be made to provide the reporting employee, upon request, with a copy of page one of the Disciplinary Report before the end of the shift.
   c. Refusal or Removal of an Institutional Program or Policy (ROIP) Procedure. If a disciplinary report is received while the inmate is physically participating in a program, the inmate may also be charged with the ROIP disciplinary report.
   d. Community Release Procedure.
      i. The Disciplinary Report and a CN 9501, Disciplinary Waiver Report, shall be referred to the Director of the Community Release Unit (CRU) by the facilities community release liaison for any inmate that is approved or being reviewed for community release.
      ii. The Director of CRU shall review all appropriate documentation and make the determination if a disciplinary waiver is appropriate.
     iii. The Director of CRU decision is final and not subject to any further review.
   e. Escape Procedure.
      i. Upon discovery of an escaped inmate, a Parole Officer or Unit Administrator (or designee) shall prepare a disciplinary report (form CN 9503) with all fields completed to include signatures with their respective dates and times with the exception of the top right report date and offender notice sections, which shall remain blank.
        1. Facility procedure. The original disciplinary report shall then be placed in a sealed envelope and affixed to Section 4 of the offender's master file. The envelope shall be labeled "Deliver immediately to the Desk Lieutenant upon remand to custody".
        2. PCS procedure. PCS shall generate and maintain a disciplinary report electronically for Escape from PCS Supervision.
      ii. Upon remand to custody, the disciplinary report shall be delivered to the Desk Lieutenant and that supervisor shall complete the top right report date that coincides with the remand date located on the offender's RT-60. The supervisor shall then have staff complete the fields under "offender notice" and deliver a photocopy of the disciplinary report to the inmate. The original disciplinary report is then placed in the Disciplinary Investigator's box.
        1. PCS staff shall forward the Disciplinary Report and any supporting documentation to the appropriate staff at the receiving facility to initiate the disciplinary process.
     iii. The remand date and date of delivery normally should not exceed seven (7) business days, and shall remain in compliance with the time frames as established by Section 16 of Administrative Directive 9.5, Code of Penal Discipline.
        1. In the event that the disciplinary report delivery is to exceed seven business days from remand, the CN 9503, Disciplinary Report and a CN9501, Disciplinary Waiver Report, shall be referred to the

| Directive Number 9.5 | Effective Date 10/01/2019 | Page 6 of 21 |
|---|---|---|
| Title | Code of Penal Discipline | |

          appropriate Unit Administrator or designee by the Disciplinary Investigator.

    2. The Unit Administrator or designee shall approve or deny the delivery or the CN 9503, Disciplinary Report, and complete the CN9501, Disciplinary Waiver Report then forward back both forms to the Disciplinary investigator for adjudication.

  f. <u>Parole</u>. Any inmate that has been voted to parole, while out in the community or incarcerated waiting placement, and is convicted of a Class A or B disciplinary offense shall be referred to the Chairman of the Board of Pardons and Paroles for reconsideration.

11. <u>Administrative Detention</u>.

  a. A custody supervisor may remove an inmate from population, in accordance with Administrative Directive 9.4, Special Management, pending a disciplinary disposition when justified for reasons of security or order.

  b. If an inmate is removed from population, the Unit Administrator or designee shall review the case within 72 hours of placement in Administrative Detention to determine whether continued confinement in the status is necessary.

    i. The date and time of placement in Administrative Detention shall be recorded on the disciplinary report.

  c. If punitive segregation is subsequently imposed, any time spent in Administrative Detention shall be credited toward the disciplinary sentence on a day-for-day basis.

12. <u>Classes of Offenses</u>.

  a. There shall be three (3) classes of offenses: A, B and C.

  b. Class A offenses shall be the most serious offenses and Class C offenses the least serious.

  c. Offenses shall be categorized by their intended class and in accordance with Attachment B, Code of Penal Discipline Offenses.

13. <u>Provisions, Identification, and Procedures for Authorized Sanctions and Penalties</u>. An inmate who is in violation of this Directive shall be sanctioned and/or penalized in accordance with the provisions of this section.

  a. <u>General Provisions</u>. Disciplinary sanctions and penalties shall be administered in order to regulate an inmate's future behavior.

    i. <u>Degree</u>. The sanctions and/or penalties imposed shall be proportionate to:

      1. the seriousness of the offense; and,

      2. the inmate's disciplinary record.

    ii. <u>Accessory, Attempt and Conspiracy</u>. When supported by the evidence, the offenses of Accessory, Attempt and Conspiracy shall be deemed to be included in the substantive offense without having to be separately charged. Accessory, Attempt and Conspiracy shall be punishable in the same degree as if the substantive offense was committed.

    iii. <u>Self-Defense</u>. A decision that the inmate acted in self-defense may mitigate the severity of the sanction(s) imposed.

    iv. <u>Limits</u>.

      1. Except as specifically provided in this Directive the following punishment limits shall be observed:

        a. for Class A offenses: punitive segregation; forfeiture of good time or RREC; and two (2) different penalties;

        b. for Class B offenses: punitive segregation; forfeiture of good time or RREC; and one (1) penalty; and,

        c. for Class C offenses: forfeiture of good time and one (1) penalty.

      2. Guilty of the Class A offense for Refusal or Removal of an Institutional Program or Policy shall only result in forfeiture of 25 RREC with no other sanctions or penalties.

  b. <u>Sanctions</u>. The following Sanctions may be imposed:

    i. <u>Punitive Segregation</u>.

      1. <u>General Standards</u>.

| Directive Number | Effective Date | Page 12 of 21 |
|---|---|---|
| 9.5 | 10/01/2019 | |
| Title | | |
| Code of Penal Discipline | | |

    c. The disciplinary report and CN9510 shall be forwarded to the Disciplinary Coordinator and a supervising mental health clinician for further administrative review and disposition.

  ii. Unit Administrator Override.

    1. Any disciplinary report where a qualified mental health professional recommends for the disciplinary process be discontinued process shall be submitted to the Unit Administrator for review.

    2. Upon review, the Unit Administrator may make the determination that the inmate shall still receive the disciplinary report.

      a. If the Unit Administrator determines that the inmate shall still receive the disciplinary report, they shall indicate this decision in writing on the CN 9510.

        i. In any case in where the inmate is given a disciplinary report despite the qualified mental health professional's recommendation that the inmate is incapable of participating in the process, a copy of the CN 9510, shall be given to the Hearing Officer prior to the disciplinary hearing and/or the imposition of any sanctions.

15. Staff Responsibilities.

  a. Custody Supervisor/Unit Manager. A custody supervisor or unit manager shall be responsible to:

    i. Manage disciplinary functions during the shift.

    ii. Review the disciplinary report to ensure that it is complete and that, on its face, the evidence supports the charge.

    iii. Sign the disciplinary report.

    iv. If an inmate has a mental health score equal to or greater than 4, or if custody staff requests a mental health review of the Disciplinary Report, a custody supervisor shall forward a copy of the Disciplinary Report to mental health staff, who shall complete a CN 9510 and return the completed CN9510 form to a Custody Supervisor.

      1. The Custody Supervisor shall review and sign the CN 9510 form and, if appropriate, initiate delivery of the Disciplinary Report.

    v. With the exception of disciplinary reports for scarification, tattooing, or body piercing, each disciplinary report for Self-Mutilation/A shall require an identified mental health professional to conduct a mental health assessment and complete a CN 9510, Mental Health Disciplinary Review form prior to proceeding with delivery, regardless of the inmate's mental health score.

      1. The Custody Supervisor shall review and sign the CN 9510 form and, if appropriate, initiate delivery of the disciplinary report.

    vi. Initiate delivery of the disciplinary report to the accused and forward the original documents to the Disciplinary Investigator.

  b. Disciplinary Coordinator. Each Unit Administrator shall appoint a supervisory employee as a Disciplinary Coordinator who shall coordinate the disciplinary functions of the facility and who shall ensure that the facility complies with the policies and procedures of this Directive. The Disciplinary Coordinator shall be responsible for the processing and distribution of all records and reports under this Directive unless responsibility is expressly delegated to another.

    i. In addition to the administrative duties, the Disciplinary Coordinator shall have authority to:

      1. substitute a charge on a disciplinary report in accordance with the provisions of Section 16 of this Directive;

      2. defer prosecution of a disciplinary report in accordance with the provisions of Section 16 of this Directive; and

      3. dismiss a disciplinary report, prior to hearing, that does not serve the disciplinary interests of the facility.

    ii. If a disciplinary report is deferred, dismissed or the charge substituted under this section, the Disciplinary Coordinator shall send a copy of CN

| Directive Number 9.5 | Effective Date 10/01/2019 | Page 19 of 21 |
|---|---|---|
| Title | Code of Penal Discipline | |

vii. <u>Confidential Information</u>.
   1. Information which is material to the allegation of misconduct may be exempted from disclosure if it places another person in jeopardy or compromises the unit's security.
   2. If the Investigator believes that documentary or testimonial information should be exempted from disclosure, the Investigator shall present the information and an assessment of its credibility to the Hearing Officer outside the presence of the inmate and the inmate's Advisor.
   3. The Hearing Officer shall decide if the information should be exempt from disclosure and, if so, shall inform the inmate that there is exempted information.
      a. If the inmate is found guilty of the offense, the Hearing Officer shall state, in writing, a summary of the information, an assessment of its reliability and why it was exempted. This statement shall be maintained in a file, which is not accessible to any inmate.
   4. If the Hearing Officer determines information is not confidential, the Hearing Officer may proceed with the hearing or may continue the hearing to permit the inmate time to prepare a defense.

viii. <u>Rebuttal</u>. The accused inmate or the Advisor may be allowed to rebut evidence and information presented at the disciplinary hearing subject to constraints imposed by the Hearing Officer.
   1. The Hearing Officer shall constrain the rebuttal if it is irrelevant, redundant, or disrupts an orderly hearing.

ix. <u>Defense</u>.
   1. The inmate shall be given an opportunity to present the inmate's version of the offense, orally and/or in writing.
   2. The inmate shall be given an opportunity to present witness testimony subject to the provisions of Section 16 E of this Directive.
   3. Witnesses may be questioned by the Hearing Officer.
   4. Defense information shall be recorded on CN 9504, Disciplinary Process Summary Report.

16.

i. <u>Substitute Charge</u>. A charge may be substituted if it becomes apparent that the original charge was inappropriate. A substitute charge may occur during the pre-hearing investigation or hearing.
   i. <u>During Pre-Hearing Investigation</u>. A Disciplinary Coordinator may substitute a charge during pre-hearing investigation by altering the original disciplinary report and initialing it. A copy of the disciplinary report containing the substituted charge shall be delivered to the inmate at least 24 hours prior to a hearing.
   ii. <u>During Hearing</u>. A Hearing Officer may substitute a charge during the hearing by informing the inmate of the substitute charge and taking a plea. A substitute charge renders the original charge dismissed. If the inmate pleads not guilty to the substituted charge, a continuance may be granted upon request of either the Investigator or the accused inmate to allow for further investigation or for defense preparation.

j. <u>Deferred Prosecution</u>.
   i. A Class A disciplinary report shall not be deferred.
   ii. The Disciplinary Coordinator or the Hearing Officer may defer prosecution of a Class B or C disciplinary report for up to 60 days when the inmate's disciplinary record has been positive and the alleged offense appears to be incidental.
      1. If during the 60-day period, the inmate commits a classified disciplinary offense, the deferred disciplinary report shall be processed to disposition.
      2. Only one (1) charge may be deferred in any 60-day period, no record shall be maintained of the deferred disciplinary report if the deferral expires. The expiration shall be noted in the facilities disciplinary logbook to close out the report.



Exhibit

F

1. Definiton of flagrant Disobedience

2. Rules for ADministrative Detention



# Code of Penal Discipline Offenses
## Connecticut Department of Correction

Attachment B
REV 2/27/24
AD 9.5

12. <u>Felonious Misconduct</u>. Committing an act that would be a felony under the Connecticut General Statutes that is not a classified offense prohibited by this Directive.
   a. Charging under this section requires the authorization of the Unit Administrator and a specific statutory citation.
13. <u>Fighting</u>. Engaging in physical combat with another person.
14. <mark>Flagrant Disobedience.</mark>
   a. <mark>Disobeying a clearly stated order in a way that conveys a deliberate challenge to authority and jeopardizes the safety, security and orderly operation of the facility; or</mark>
   b. Failing to comply with a lawful direction to refrain from contacting the victim of the inmate's crime.
15. <u>Hostage Holding</u>. Taking, detaining or holding another person against the other person's will.
16. <u>Hostage Holding of a Department of Correction Employee</u>. Taking, detaining or holding of a Department of Correction employee against the person's will.
17. <u>Impeding Order</u>.
   a. Impeding the order or security of the unit by intentionally or recklessly causing a grave risk of alarm, unauthorized assembly; or
   b. Engaging in disorderly conduct which severely interferes with the unit's normal operations.
18. <u>Interfering with Safety or Security</u>. Interfering with, resisting or obstructing the execution of a staff member's official duties.
19. <u>Intoxication</u>.
   a. Being under the influence of alcohol or any intoxicating substance;
   b. Being under the influence of a drug which has not been officially prescribed by DOC Health Services Staff; or
   c. When the presence of any of the above mentioned substances are found in the body by an approved scientific method of analysis.
20. <u>Possession of Sexually Explicit Materials</u>. Possession, display or transfer of any pictorial depictions of sexual activity or nudity which, by its nature or content, poses a threat to the security, good order or discipline of the facility, facilitates criminal activity, or harasses staff in accordance with Administrative Directive 10.7 Inmate Communication.
21. <u>Public Indecency</u>. Intentionally exposing one's intimate parts or fondling/caressing such intimate body parts.
22. <u>Refusal or Removal of an Institutional Program or Policy</u>.
   a. Refusing to sign an Offender Accountability Plan;
   b. Refusing to participate in or refusing to attend a recommended program listed on an Offender Accountability Plan or being removed from a recommended program due to lack of participation;
   c. Lack of attendance;
   d. Involved in a serious incident during the program or being continually disruptive while in the program; or
   e. Refusing to submit a DNA sample or refusing to complete Sex Offender Registration.
23. <u>Refusal to Give a Specimen</u>. Refusing a direct order to provide a blood, urine or other required specimen within three (3) hours excluding a DNA sample or Saliva Alcohol test.
24. <u>Refusing Housing</u>. Disobeying staff direction to be or remain housed in a certain location within a correctional facility.
25. <u>Riot</u>.
   a. Inciting or participating in a general disturbance which results in:
      i. a loss of control of all or a portion of a unit;
      ii. serious injury;
      iii. serious property damage;
      iv. or other organized disobedience to the rules of the unit.
   b. A charge of riot may be used only when the Commissioner declares that a riot has occurred and authorizes use of the charge.
26. <u>Secreting Identity</u>. Presenting false identification or wearing a hood or other garment for the purpose of concealing identity.
27. <u>Security Risk Group Affiliation</u>.
   a. Possessing or displaying any materials, symbols, colors or pictures of any identified security risk group;
   b. Any communication that can be reasonably associated with a security risk group; or
   c. Behaviors and/or language uniquely or clearly associated with a security risk group.
28. <u>Security Tampering</u>.
   a. Tampering with locking, security or safety devices; or

Attachment A
REV 3/7/25
AD 9.4

# Restrictive Housing and Special Management Status Matrix
## Connecticut Department of Correction

### Restrictive Status

| Type of Restrictive Status | Purpose(s) | Approval Authority for Placement | Approval Authority for Release | Authorized Length of Confinement | Review Requirements |
|---|---|---|---|---|---|
| Administrative Detention | During an investigation or pending a hearing if, an inmate may need protection or poses a threat to facility security and safety. | Shift Commander, higher authority or Director of Offender Classification and Population Management | Unit Administrator, higher authority or Director of Offender Classification and Population Management | Up to 14 calendar days. When an Administrative Segregation hearing is pending, up to 30 calendar days. These timeframes shall not exceed the limitations set forth in CGS 18-96b | By the Unit Administrator or designee as outlined on the CN 9401, Restrictive Housing Order. |
| Punitive Segregation | Discipline (Requires a hearing prior to placement) | Disciplinary Hearing Officer or Disciplinary Investigator | Unit Administrator or higher authority or inmate serves time | In accordance with A.D. 9.5, Code of Penal Discipline | Local as appropriate |
| Transfer Detention | Pending transfer as appropriate | Shift Commander, higher authority or Director of Offender Classification and Population Management | Shift Commander, higher authority or Director of Offender Classification and Population Management | Up to 72 hours excluding weekends and holidays | Local as appropriate |

### Special Management Status

| Type of Special Management Status | Purpose(s) | Approval Authority for Placement | Approval Authority for Release | Authorized Length of Confinement | Review Requirements |
|---|---|---|---|---|---|
| Administrative Segregation | Classified as a threat to staff, other inmates or facility security. (Requires a hearing prior to placement) | Director of Offender Classification and Population Management or higher authority | Commissioner or designee | Once inmate completes all program components associated with placement | A classification hearing shall be held at a minimum of every six (6) months. By a mental health professional after 30 days of initial placement and every 90 days thereafter. |
| Chronic Discipline Interval I | Adjustment of problematic inmate behavior due to multiple disciplinary reports | Director of Offender Classification and Population Management | Approval for release to Interval II shall be by the Unit Administrator | Minimum of 30 days | A classification hearing shall be held at a minimum of every six (6) months. By a mental health professional after 30 days of initial placement and every 90 days thereafter. |
| Chronic Discipline Interval II | To prepare inmate for return to general population | Unit Administrator | Director of Offender Classification and Population Management | Minimum of 60 days | A classification hearing shall be held at a minimum of every six (6) months. By a mental health professional after 30 days of initial placement and every 90 days thereafter. |
| Special Needs Management | For inmates who have demonstrated behavioral qualities either through the serious nature of their crime, behavior or reasonable belief that they continue to pose a threat to the safety and security of staff, other inmates, themselves, or the public. | Director of Offender Classification and Population Management in consultation with the Deputy Commissioner of Operations or designee and the DOC Director Behavioral Health Services or designee. | Director of Offender Classification and Population Management in consultation with the Deputy Commissioner of Operations or designee and the Director Behavioral Health Services or designee. | Once recommendation resulting from a classification or mental health review is suggested by the reviewing authority. | A classification hearing shall be held at a minimum of every six (6) months. By a mental health professional after 30 days of initial placement and every 90 days thereafter. |

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Kiyon walker
plaintiff                          :        civil#

v.                                 :

Bryant                             ;              Date:

Plaintiffs first set of
Interrogatories to Defendants

In accordance with rule 33 of the federal rules of civil procedure Plaintiff Requests that Defendant Bryant answer the following int interrogatories under oath, and that the answers be signed by the person making them and be served on plaintiffs within 30 days of service of these interrogatories.

If you cannot answer the following interrogatories in full, after excercising due diligence to secure the information to do so, so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions

These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materializes.

1. How long have you worked as a corrections officer?

2. How long have you worked at the cheshire facility?

3. What are your duties?

4. Have you ever been disciplined regarding your duties?

5. Have you recieved any repremands verbal or written while employed by the department of corrections?

6. How many Disciplinary reports have you written that has been dismissed?

7. Around the month of june you wrote a ticket for indecent exposure to an inmate do you know why that ticket was thrown out? ( june 2025) While involved in an incident who is supposed to be the reporting officer.

8. What was the reason a lieutenant Wrote the ticket for you if the ticket is supposed to be written by the officer with direct contact of the issue?

Cited Haines vs. Kearney

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Kiyon Walker                    :    civil #
    Plaintiff

v.                              :

Bryant                          :       Date:

   In accordance with rule 33 of the federal rules of civil procedure Plaintiff requestvthat the defendant Eliades answer the following interrogatories under oath, and that the answers be signed by the person making them and be served on plaintiff within 30 days of the serviceeof these interrogatories.

   If you cannot answer the following interrogatories in full, after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifying your inability to a answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.

1. How long have you been employed by the department of corrections?

2. How long have you worked at the cheshire facility?

3. Where are you assigned?

4. What are your duties?

5. Did you file any documents regarding this incident or disciplinary proceedings?

6. Have you recieved any repremands during your employment?

7. On 7/9/2025  Why did the plaintiff Kiyon Walker not see the D.H.O as you promised the day before?

8. Did any other inmates see the D.H.O that day?

9. Why was the ticket not thrown out if the video shows the incident was falsified?

10. Why didnt you respond to the request forms sent to you from me?

11. When you stated you have to talk to your boss who was the D.O.C official you were refering to?

12. When you told me I had to wait for the D.H.O because I had to see the D.H.O due to your boss saying "she is not going to go against her staff for an inmate she is gonna let someone out side of the facility do that." Is there another remedy for you to correct this issue without your boss?

13. When you told me you watched the video and seen the video reflects exactly what I said. Did you bring that information to your boss?

14. Who's decision was it to hold me in RHU after watching the video?

15. Why didnt you ensure I was released from RHU after your review off the footage?

16.  Have you ever thrown out a ticket written by or on behalf of officer Bryant?

17. Have you ever seen the D.H.O throw out any tickets written by officer Bryant?

18. What was the reason for the substitute charge?

19. Is a substitute charge commonly given instead of throwing out tickets that clearly are falsified

Cited Haines vs. Kearney

## Inmate Request Form
### Connecticut Department of Correction

CN 9601
REV
04/30/2021

Inmate name: Kiyon Walker

Inmate number: 420454

Facility/Unit: Cheshire C.I

Housing unit: 54-15

Date: 7-14-25

Submitted to: F.O.I (MS.K)

Request: I would like a copy of the female
Correction officer Bryant's repremands and also Disciplinary
history please and thank you

"Copied before going in. USmail will be copied again.
when response given"

*continue on back if necessary*

Previous action taken:

*continue on back if necessary*

Acted on by (print name):

Title:

Action taken and/or response:

*continue on back if necessary*

Staff signature:

Date:



# STATE OF CONNECTICUT
# DEPARTMENT OF
# CORRECTION
### External Affairs Division



# FREEDOM OF INFORMATION
# UNIT

| | | |
|---|---|---|
| Ned Lamont<br>Governor | 24 Wolcott Hill Road \| Wethersfield, CT 06109<br>*An Affirmative Action/Equal Opportunity Employer* | Angel Quiros<br>Commissioner |

7/15/25

Inmate Walker, Kiyon #420454

RE: FOI Records Request received on July 15, 2025

Dear Inmate, Walker, Kiyon #420454

This is an acknowledgement that the Department of Correction received your Freedom of Information Act request that I received on 7/15/25 requesting a staff members personal file. Your request has been given a reference number of #R002380071525 for tracking purposes. However any records or information that may be contained in a DOC staff's personnel file is exempt under CGS 18-101f. This concludes your request at this time.

If you have any questions, please contact my office. Thank you for your attention.

Sincerely,

Officer Kozikowski

Cheshire CI

CN 9601
REV
04/30/2021

## Inmate Request Form
### Connecticut Department of Correction

Inmate's name: Kiyon Walker     Inmate number: 420454

Facility/Unit: C.C.I     Housing unit: 54-15     Date: 7-14-25

Submitted to: F.O.I (MS.K)

Request: I want any and all incident reports and a copy of the log book on 7-5-2025 that have to do with my Seg placement for flagerant disobedience thank you for your time & patience

( Copied before going in U.S mail will be copied again once response given )

*continue on back if necessary*

Previous action taken:

*continue on back if necessary*

Acted on by (print name):     Title:

Action taken and/or response:

*continue on back if necessary*

Staff signature:     Date:

 

# STATE OF CONNECTICUT
# DEPARTMENT OF
# CORRECTION
## External Affairs Division

## FREEDOM OF INFORMATION UNIT

Ned Lamont
Governor

24 Wolcott Hill Road | Wethersfield, CT 06109
*An Affirmative Action/Equal Opportunity Employer*

Angel Quiros
Commissioner

**Reference #R002406-071725**

7/17/25

Inmate Walker, Kiyon #420454

RE: FOI Records Request received on July 17, 2025

Dear Inmate, Walker, Kiyon #420454

This is an acknowledgement that the Department of Correction received your Freedom of Information Act request that I received on 7/15/25 requesting incident report from 7/5/25 and logbook entries. However the incident report is exempt from disclosures per CGS 1-210(b)(1), due to it being open and per 1-210(b)18(G) Logs or other documents that contain information on the movement or assignment of inmates or staff at correctional institutions or facilities are exempt from disclosure. Feel free to write back at a later date for the incident report this concludes your request at this time.

If you have any questions, please contact my office. Thank you for your attention.

Sincerely,

Officer Kozikowski

Cheshire CI