**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KIYON WALKER, | : | |
| *Plaintiff*, | : | |
| | : | CASE NO. 3:26-CV-217 (KAD) |
| v. | : | |
| | : | |
| BRYANT, *et al.*, | : | JUNE 4, 2026 |
| *Defendants*. | : | |

**INITIAL REVIEW ORDER**

Kari A. Dooley, United States District Judge:

Plaintiff Kiyon Walker, a pretrial detainee held at Cheshire Correctional Institution,[1] commenced this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 ("Section 1983") against five DOC officials, seeking damages and declaratory relief for violations of his rights under the Fifth and Fourteenth Amendments to the United States Constitution. For the reasons that follow, the Complaint is **DISMISSED without prejudice** to the filing of an Amended Complaint.

**Standard of Review**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)–(b). In doing so, the Court must assume the truth of the allegations and interpret the complaint liberally to "to raise the strongest arguments it suggests." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of

---

[1] Plaintiff entered the Department of Correction ("DOC") on January 14, 2019, and remains an unsentenced inmate. *See* DOC, *Inmate Information*, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=420454 (last visited June 3, 2026). Plaintiff self-identifies as a pretrial detainee, and the Judicial Branch website reveals that he has pending cases in the Hartford Judicial District which remain on the trial list. *See, e.g.*, State of Connecticut Judicial Branch, *Pending Case Detail*, https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=eddf6ebf-ea06-4b66-93a9-978ae6990200 (last visited June 3, 2026). The Court may take judicial notice of content on these websites. *See Costa v. Kocaqi*, No. 3:24-CV-1586 (KAD), 2025 WL 1207538, at *2 n.3 (D. Conn. Apr. 25, 2025).

solicitude for *pro se* litigants).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

**Allegations**

The Court does not set forth all of the facts alleged in the Complaint.  Instead, the Court summarizes Plaintiff's basic factual allegations here only to give context to its rulings below.

On July 5, 2025, Plaintiff left his cell to take a shower.  Compl., ECF No. 1 at ¶ 1.  As Plaintiff waited for a shower to become available, he made a phone call.  *Id.* at ¶¶ 1–2.  While Plaintiff was on the phone, Defendant Correctional Officer ("CO") Bryant admonished Plaintiff for wearing a "doo-rag."  *Id.* at ¶ 3.  Plaintiff "immediately" removed the doo-rag.  *Id.*  Afterwards, Plaintiff could hear Defendant Bryant saying "very disrespectful things" about Plaintiff to another inmate and CO.  *Id.* at ¶ 4.  Plaintiff approached "the bubble" area to apologize to Defendant Bryant after he concluded his call.  *Id.* at ¶ 5.

Once at the bubble, Defendant Bryant "had an outburst" before Plaintiff could say anything.  *Id.* at ¶ 6.  Defendant Bryant screamed profanities at Plaintiff and told him to get away from the bubble.  *Id.*  Defendant Bryant told Plaintiff that she finally "got" him and that Plaintiff was "going to seg."  *Id.*  Attempting to "deescalate the situation," Plaintiff told Defendant Bryant that he "didn't do anything."  *Id.* at ¶ 7.  This further angered Defendant Bryant, who told Plaintiff to get out of her face.  *Id.* at ¶ 8.  Plaintiff walked away as Defendant Bryant continued to yell obscenities and threats at Plaintiff.  *Id.* at ¶ 9.  As Defendant Bryant yelled at Plaintiff, she called for assistance on the radio.

*Id.* at ¶ 10.  Officers rushed into the unit, handcuffed Plaintiff, and told Plaintiff that he was going to the Restrictive Housing Unit ("RHU") for "disobeying a direct order."  *Id.* at ¶ 11.  Officers then strip-searched Plaintiff, placed him in an empty cell, and told him that he was being placed in the RHU for "flagrant disobedience." [2]  *Id.* at ¶ 12.

Defendant Lieutenant Ciesco, who was in charge of Plaintiff's placement in the RHU, told Plaintiff that he would speak to Defendant Bryant to "find out what happened."  *Id.* at ¶ 13. Defendant Ciesco then wrote Plaintiff's disciplinary ticket "seconding the actions" of Defendant Bryant.  *Id.*  The disciplinary report, which is attached to the Complaint, states that Plaintiff "was given multiple verbal directions to take off his Doo-Rag (head covering)," but that Plaintiff "refused" to take it off.  *Id.* at 25.  The report concluded that this constituted "Flagrant Disobedience" because "[d]isobeying a clearly stated order in a way that conveys a deliberate challenge to authority [] jeopardizes the safety, security and orderly operation of the facility."  *Id.*  Two days after the incident with Defendant Bryant, Defendant CO Eliades came to Plaintiff's cell to have Plaintiff sign the disciplinary ticket, which would have been tantamount to a "guilty plea."  *Id.* at ¶ 14.  Plaintiff refused to sign the ticket because it was based on false allegations.  *Id.* at ¶ 15.  Defendant Eliades told Plaintiff he would watch the video from the incident and speak to Defendant Captain Distasti and Warden Reis about the ticket.  *Id.*

The following day, Plaintiff met with Defendant Eliades, who told Plaintiff that he watched the video from the incident and concluded that Plaintiff was telling the truth about Defendant Bryant's false allegations.  *Id.* at ¶ 16.  However, Defendant Eliades told Plaintiff that he would still have to go before a Disciplinary Hearing Officer ("DHO"), because Defendant Eliades and "his bosses" were "not going to go against staff for an inmate."  *Id.* at ¶ 17.  Instead, the DHO could

---

[2]  Plaintiff attaches the affidavits of two inmates who largely corroborate Plaintiff's allegations regarding his interactions with Defendant Bryant.  *See* Compl. at 36–40.

"handle these issues." *Id.* Defendant Eliades told Plaintiff that the DHO would be at the prison the following day and that Plaintiff was on the list to see the DHO. *Id.* at ¶ 18.

The DHO came to the prison the following day. *Id.* at ¶ 20. While multiple inmates appeared before the DHO, Plaintiff was not among them. *Id.* Defendant Eliades came to Plaintiff's cell to tell Plaintiff that he had spoken to the DHO and had shown the DHO the video from the incident. *Id.* at ¶ 21. Defendant Eliades told Plaintiff that "something came up," the DHO had to leave, and the DHO would not be back to the prison until the following week. *Id.*

Defendant Eliades and "his bosses," however, came up with a "solution." *Id.* Defendant Eliades told Plaintiff that the only way he could be released from the RHU was if he signed a Class B disciplinary ticket for "disobeying [a] direct order." *Id.* at ¶ 22. If Plaintiff refused to sign the ticket, he would remain in the RHU until the DHO arrived the following week. *See id.* Plaintiff told Defendant Eliades that this was not fair. *Id.* Defendant Eliades responded that "staff has to stick together." *Id.* Plaintiff "[c]ouldn't [h]andle" the "psychological injury" of being in the RHU, so he signed the Class B ticket and was placed back in the general population. *Id.* at ¶ 23. Once back in the general population, Plaintiff spoke to CO Watson, who told Plaintiff that Defendant Bryant "was getting [Plaintiff] for something that happened in the past[.]" *Id.* at ¶ 24. CO Watson indicated that Defendant Bryant "was on your ass[,] and you know that." *Id.*

**Discussion**

Liberally construed, the Complaint asserts (1) a Fourteenth Amendment procedural due process claim related to Defendant Bryant's false allegations that resulted in Plaintiff's placement in the RHU, and the other Defendants' failure to investigate or correct these allegations;[3] and (2) a

---

[3] Plaintiff purports to bring this claim under the Fifth and Fourteenth Amendments, Compl. at 3, but "[t]he Fifth Amendment Due Process Clause . . . applies only to federal, not state, inmates." *Radice v. Doe*, No. 3:24-CV-531 (VAB), 2024 WL 3429345, at *2 (D. Conn. July 14, 2024). Accordingly, the Court has analyzed this claim under the Fourteenth Amendment only.

claim related to Defendant Bryant "humiliat[ing], threaten[ing], [and] disrespect[ing]" Plaintiff and calling for emergency assistance. *See* Compl. at 18–19. The Court considers each claim in turn.

*Fourteenth Amendment Claim*

An "inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). There are, however, "two exceptions to this rule: when an inmate is able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right," including rights protected by the First Amendment. *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (internal quotation marks and citations omitted); *see, e.g.*, *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under [Section] 1983.").

Defendant Bryant

As an initial matter, while the Complaint indicates that Defendant Bryant issued a false disciplinary ticket in retaliation "for something that happened in the past," *see* Compl. at ¶ 24, Plaintiff does not suggest that such prior conduct involved the exercise of a "constitutionally protected right," *e.g.*, filing a grievance, etc. *See Willey*, 801 F.3d at 63; *Gayle*, 313 F.3d at 682. Indeed, the nature of the past incident is completely unknown. Thus, Plaintiff's Fourteenth Amendment claim is reviewed to determine whether Plaintiff was "disciplined without adequate due process as a result of the report[.]" *Willey*, 801 F.3d at 63.

Generally, courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the

second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Bangs v. Smith*, 84 F.4th 87, 97 (2d Cir. 2023) (internal quotations and citation omitted). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citation omitted).

For sentenced prisoners, liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). However, the analysis is different for unsentenced inmates, to wit, pretrial detainees, like Plaintiff. *Branch v. Guadarrama*, No. 3:24-CV-536 (MPS), 2024 WL 1973494, at *2 n.1 (D. Conn. May 3, 2024) ("Unsentenced inmates are considered pretrial detainees."). The limitation on liberty interests imposed by *Sandin* does not apply to pretrial detainees. *See Benjamin v. Fraser*, 264 F.3d 175, 188–89 (2d Cir. 2001). "[A] state's authority over pretrial detainees is limited by the Constitution in ways that the treatment of convicted persons is not." *McGarry v. Pallito*, 687 F.3d 505, 513 (2d Cir. 2012).

Pretrial detainees have "a constitutional right to be free from conditions of confinement that amount to punishment, because the government has no right to punish a pre-trial detainee prior to an adjudication of guilt in accordance with due process of law." *Banks v. Michaud*, No. 3:20-CV-326 (JAM), 2020 WL 7188476, at *4 (D. Conn. Dec. 7, 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Pretrial detainees must be "given 'written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence' before being subjected to punitive as opposed to administrative measures." *Almighty*

*Supreme Born Allah v. Milling*, 876 F.3d 48, 55, n.3 (2d Cir. 2017) (quoting *Benjamin*, 264 F.3d at 190). With those provisions in place, disciplinary punishment may only be imposed "upon a showing of 'some reliable evidence' of guilt." *Elder v. McCarthy*, 967 F.3d 113, 117 (2d Cir. 2020) (quoting *Sira v. Morton*, 380 F.3d 57, 81 (2d Cir. 2004)).

But while pretrial detainees or unsentenced inmates are entitled to these rights, they may nonetheless waive them under certain circumstances. *See*, *e.g.*, *Collins v. Foreman*, 729 F.2d 108, 120 (2d Cir. 1984) (concluding that "to the extent that litigants may have a due process right to appear before an Article III judge in a civil case, they may freely waive that right"). For example, in the criminal context, it is well-settled that "a defendant who knowingly and voluntarily enters a guilty plea waives all nonjurisdictional defects in the prior proceedings." *United States v. Smith*, No. 23-7185, 2025 WL 603002, at *1 (2d Cir. Feb. 25, 2025) (summary order) (internal quotation marks omitted) (quoting *Lebowitz v. United States*, 877 F.2d 207, 209 (2d Cir. 1989)). Because "[p]risoners are afforded fewer rights in prison disciplinary proceedings than criminal defendants receive at trial, . . . courts considering due process claims have rejected those claims where the prisoner has pleaded guilty to the disciplinary charge." *Rashid v. Kurtulus*, No. 3:23-CV-722 (VAB), 2023 WL 5672589, at *8 (D. Conn. Sept. 1, 2023) (citing *Coleman v. Sutton*, 530 F. Supp. 2d 451, 453 (W.D.N.Y. 2008) (plaintiff's plea of guilty to the charges in disciplinary report "defeats any claim based on issuance of the report"), *aff'd*, 355 F. App'x 566 (2d Cir. 2009)); *see also Rodriguez v. Cook*, No. 3:20-CV-1902 (CSH), 2022 WL 4104100, at *6 n.4 (D. Conn. Sept. 8, 2022) (plaintiff waived any procedural due process challenge to disciplinary charges by entering guilty plea); *Sosa v. Cleaver*, No. 3:03-CV-1707 (DJS), 2005 WL 1205119, at *7 (D. Conn. May 18, 2005) (noting that "[r]esearch has revealed no cases permitting an inmate who has pled guilty to disciplinary charges to challenge the propriety of the issuance of the disciplinary report").

Here, Plaintiff "sign[ed] the Class B . . . ticket," which, by Plaintiff's own admission, constituted a guilty plea to the allegations contained therein. *See* Compl. at ¶¶ 14, 23. By doing so, Plaintiff waived any due process claim arising from the ticket being issued for a purportedly improper purpose. *See Reid v. Doe*, No. 95-CV-1144 (RSP), 1997 WL 216226, at *5 (N.D.N.Y. Apr. 15, 1997) (where inmate plaintiff pled guilty to harassment charge in misbehavior report, there could be no constitutional violation arising out of the issuance of the report, even if the report was motivated in part by retaliation).

Plaintiff further alleges that he was "forced" to sign the disciplinary ticket because he "couldn't handle" the "psychological injury" of being in solitary confinement while he awaited the return of the DHO. Compl. at ¶ 23. Returning to the analogous criminal context, such an allegation amounts to a claim that the "guilty plea" is void because it was not voluntary and therefore obtained in violation of due process. *See United States v. Vargas*, 63 F. App'x 592, 594 (2d Cir. 2003) (summary order) (noting that "an involuntary guilty plea is 'obtained in violation of due process and is therefore void'") (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). If Plaintiff's "guilty plea" was, in fact, involuntary, it would not preclude the due process challenge he now brings. However, the Complaint does not plausibly allege that Plaintiff involuntarily signed the disciplinary ticket.

A guilty plea "is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988). However, "courts have rejected the notion that lockdown orders, conditions of confinement, and other restrictions constitute coercion implicating due process concerns." *Weston v. Capra*, No. 18-CV-5770 (JCM), 2022 WL 1811161, at *16 (S.D.N.Y. Apr. 13, 2022), *report and recommendation adopted*, 2022

WL 2914506 (S.D.N.Y. July 25, 2022) (collecting cases, including *U.S. ex rel. Rhyce v. Richmond*, 273 F.2d 29, 29–30 (2d Cir. 1959) (finding that solitary confinement in a "dark cell, known as 'the hole'" did not render plea involuntary)); *see also United States v. Vega*, No. 07-CR-707 (ARR), 2012 WL 1925876, at *10 (E.D.N.Y. May 24, 2012) (concluding that defendant's "claims that his deteriorating health and the punitive conditions of his confinement rendered his guilty plea involuntary are [] frivolous."). Outside of his purported inability to psychologically handle the conditions in the RHU—which is insufficient on its own, *see Weston*, 2022 WL 1811161 at *16— Plaintiff offers no other basis upon which his guilty plea was involuntary. Absent such allegations, as discussed *supra*, Plaintiff's "guilty plea" precludes his due process challenge to his disciplinary proceedings. *See Rashid*, 2023 WL 5672589 at *8.

For all of the foregoing reasons, Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Bryant must be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915A(b)(1); *see also Holloway v. Douglas*, No. 3:24-CV-1172 (VDO), 2024 WL 3860070, at *3 (D. Conn. Aug. 19, 2024) (dismissing false accusation claim against correctional officer because plaintiff was not denied due process and the allegedly false report was not issued in retaliation for exercising a constitutional right). The dismissal of this claim is without prejudice, to afford Plaintiff the opportunity to fill in, as may be possible, the factual gaps in the allegations.

<u>Defendants Ciesco, Sonido, Eliades and Distasti</u>

Plaintiff's claims against the remaining defendants are derivative of his procedural due process claim against Defendant Bryant. Plaintiff alleges that Defendant Ciesco "should have reviewed the incident before just taking [Defendant] Bryant's word . . ." Compl. at 18. Plaintiff also alleges that Defendant Sonido failed to ensure that the disciplinary report was "fully and correctly completed" by reviewing video of Plaintiff's interaction with Defendant Bryant. *Id.* In

9

other words, Plaintiff maintains that Defendants Ciesco and Sonido should have investigated Defendant Bryant's allegations before they were included in the disciplinary report. However, "it is well established that there is no constitutional right to an investigation by government officials." *Yaseen v. Bristol Polce Dep't*, No. 3:23-CV-1042 (OAW), 2024 WL 4349053, at *4 (D. Conn. Sept. 30, 2024) (cleaned up) (collecting cases). Accordingly, Defendants Ciesco and Sonido did not violate Plaintiff's constitutional rights by failing to investigate Defendant Bryant's allegations before they were included in the disciplinary report. As such, any claims against Defendants Ciesco and Sonido must be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915A(b)(1).

Plaintiff alleges that Defendants Eliades and Distasti *did* review video evidence of Defendant Bryant's interaction with Plaintiff but that they failed to file "substituted" disciplinary reports addressing inconsistencies between the video evidence and Defendant Bryant's account of her interaction with Plaintiff. *See* Compl. at 19. Plaintiff maintains this violated "D.O.C. proper procedure[s]." *Id.* However, it is also well established that a prison official's failure to follow prison procedures is not actionable under Section 1983. *See Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (noting that a "defendants' failure to comply with prison regulations or administrative directives" does not constitute a basis for relief under Section 1983 because "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under [Section] 1983") (citing *Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011))). Accordingly, Defendants Eliades and Distasti did not violate Plaintiff's constitutional rights by failing to file a "substituted" disciplinary report in accordance with DOC procedures. As such, any claims against Defendants Eliades and Distasti must be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915A(b)(1).

10

*Harassment Claim*

Lastly, Plaintiff purports to assert a constitutional claim related to Defendant Bryant "humiliat[ing], threaten[ing], [and] disrespect[ing]" Plaintiff, and calling for emergency assistance on the radio.  *See* Compl. at 18.  Insofar as Plaintiff is a pretrial detainee and this purported claim concerns Plaintiff's prison conditions, the Court has analyzed this claim under the Fourteenth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment.").  Liberally construed, the Complaint alleges that Defendant Bryant's conduct—both the statements she made to Plaintiff and her call for emergency assistance on the radio—amounted to unconstitutional harassment.  To be sure, these allegations (somewhat sanitized herein), if proven, reflect very poorly on Defendant Bryant's professionalism and civility.  However, "it is well settled that verbal harassment and threats absent any appreciable injury does not constitute a violation of any federally protected right and are therefore not actionable under [S]ection 1983."  *Huertas v. Guadarrama*, No. 3:25-CV-118 (SRU), 2025 WL 1868045, at *7 (D. Conn. July 7, 2025) (citing *Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order) ("[V]erbal harassment, standing alone, does not amount to a constitutional deprivation."); *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (noting "[i]n this Circuit, allegations of verbal harassment are insufficient to base a [Section] 1983 claim if no specific injury is alleged") (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)); *see also Williams v. Dubray*, 557 F. App'x 84, 86 (2d Cir. 2014) (summary order) (expressly applying the same principle in the Fourteenth Amendment due process context).  Because Plaintiff does not allege that Defendant Bryant's harassing verbal conduct resulted in any

11

injury to him, this claim must be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

**Conclusion**

For all of the foregoing reasons, the Complaint is **DISMISSED without prejudice**. If Plaintiff believes he can allege facts to cure the deficiencies identified in this Initial Review Order, he may file an Amended Complaint on or before **July 20, 2026**. An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint. If no such Amended Complaint is filed, the Clerk of Court is respectfully instructed to close this case on July 21, 2026.

**SO ORDERED** at Bridgeport, Connecticut, this 4th day of June 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE